UNITED STATES of America, Appellee,

v.

MISSOURI FARMERS ASSOCIATION, INC., Appellant.

No. 85-2482.

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1986.

Decided Aug. 27, 1986.

Wanye H. Hoecker, Kansas City, Mo., for appellant.

Lyle V. Moore, Kansas City, Mo., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and REGAN,* District Judge.

REGAN, District Judge.

The Missouri Farmers Association, Inc. (MFA) appeals from a decision of the district court finding it liable for the conversion of crops in which the United States, through Farmers Home Administration (FmHA), claimed a security interest. MFA appeals from the judgment. We reverse.

The principal issue on appeal is whether the district court erred in finding that the approval by the FmHA county supervisor of the sale of the grain encumbered by the FmHA lien and subsequent use of the proceeds in compliance with an FmHA farm and home expense plan and FmHA regulations did not result in a release of the perfected security interest in the grain.

The facts are that Missouri farmers Robert and Rebecca Bergsieker operated grain farms in Lafayette County, Missouri between February 1, 1979 and March of 1983. From February 1, 1979 through June 4, 1981, FmHA made a series of loans to the Bergsiekers. By Security Agreements executed on February 1, 1979, February 15, 1980, and June 4, 1981, the Bergsiekers granted to FmHA a security interest in all crops grown on the farms they were operating. FmHA filed financing statements in Lafayette County, Missouri, on January 19, 1979, and May 26, 1981, covering crops,

* The HONORABLE JOHN K. REGAN, Senior United States District Judge for the Eastern District of Missouri sitting by designation.

livestock, and other farm products, and the proceeds thereon, growing on the farms the Bergsiekers were operating.

Although the Security Agreements executed by the Bergsiekers prohibited sale of crops "without the prior written consent of Secured Party ...", FmHA knew that the Bergsiekers were selling crops to the MFA Co-Op, Higginsville, Missouri, without its written consent. On June 25, 1980, and June 4, 1981, FmHA mailed a letter to the MFA Co-Op in Higginsville advising that FmHA had loaned money to the Bergsiekers "to enable them to carry on their farming operations ..." and that the Bergsiekers had executed security instruments on crops and other farm products.

On April 21, 1981, FmHA and the Bergsiekers established a farm and home plan for April 1981 until December 31, 1981. The plan anticipated production and sales of crops at total gross sales proceeds of $56,400.00. Family living expenses for the Bergsiekers were set at $9,000.00 and farm operation expenses were set at $44,450.00.

Between June 24, 1981 and January 4, 1982, the Bergsiekers sold crops to MFA in the total amount of $50,606.68. MFA paid the proceeds directly to the Bergsiekers without making the check payable jointly to FmHA. When the Bergsiekers furnished FmHA with specific information about the sales to MFA, FmHA's Lafayette County Supervisor released crops and proceeds from FmHA's lien totalling $24,-078.54 which had been paid to FmHA on outstanding loans. The difference between the amount released and the total sales of crops between June 24, 1981, and January 4, 1982, was $26,528.14.

In May, 1982, FmHA's Lafayette County Supervisor and the Bergsiekers reviewed the Bergsiekers' record of crop sales and expenses for the last part of 1981 and early 1982. From July 27, 1981 to January 27, 1982, the Bergsiekers paid $26,528.14 for farm operating expenses and living expenses. Even though the County Supervisor did not dispute that these amounts had been expended for farm operating and living expenses, he declined to release FmHA's lien in the amount of the expenditures. FmHA claimed that MFA converted the $26,528.14.

In March, 1982, the Bergsiekers' farming operation was liquidated and the proceeds were applied to their delinquent FmHA loans. In November, 1982, the Bergsiekers were discharged in bankruptcy. By letters dated December 3, 1982, and January 28, 1983, FmHA demanded payment of $26,-486.50 from MFA. As of January 10, 1983, the Bergsiekers owed FmHA approximately $108,200 in delinquent loans.

The United States District Court for the Western Division of the Western District of Missouri awarded FmHA $26,528.14. The district court found that the FmHA County Supervisor had declined to approve the use of the proceeds from the Bergsiekers' crop sales. Thus, it was on that premise that the district court held that FmHA had not released the lien on the crops and MFA had converted the proceeds.

■ MFA first argues that the district court erred in that it applied the FmHA regulations to determine whether or not the lien on the crops had been released when state law (Missouri Uniform Commercial Code) should have been applied. This Court has previously held that FmHA regulations, not state law, governs the release of FmHA liens. *United States v. Missouri Farmers Ass'n., Inc.*, 764 F.2d 488, 489 (1985), *cert denied* — U.S. —, 106 S.Ct 1281, 89 L.Ed.2d 588 (1986). This panel is bound by that decision.

MFA next argues that, even if FmHA regulations should be applied to determine release of liens, the application of those regulations by the district court to the facts in this case was erroneous. In our review of the district courts analysis, we found that the district court correctly identified the crops sold in the instant case as normal income security as defined in 7 C.F.R. § 1962.17(b) (1982).[1] Normal in-

---

1. 7 C.F.R. § 1962.17(b) provides in part as fol-     lows:

come security includes crops, livestock, poultry and other property sold in operating the farm. 7 C.F.R. § 1962.17(b). Thus, the security in question was properly classified as normal income security.

The district court also correctly identified 7 C.F.R. § 1962.18(b) (1982)[2] as the regulation which sets out the method for release of a lien on property and proceeds defined as normal income security. Under 7 C.F.R. § 1962.18(b), there are two ways to release a lien held by FmHA on normal income security. First, the lien can be expressly released by FmHA. Or second, the lien can be released by approval of the sale of the property by the FmHA county supervisor and subsequent use of the proceeds for one or more of the purposes set out in 7 C.F.R. § 1962.17(b). These purposes include the payment of farm, home, and other operating expenses as set out by the FmHA. 7 C.F.R. § 1962.17(d)(1) (1982) also states that release of chattel security will be based on plans developed for the borrower's current crop or business year.

In reviewing the district court opinion and the transcript to determine if the lien had been released under § 1962.18(b), there was not an express release of the lien on the Bergsiekers' crops sold to MFA from June 24, 1981 to January 4, 1982. However, the second way to release a lien under § 1962.18(b) had occurred. As stated earlier, the second way of releasing a lien under § 1962.18(b) has two requirements. The first requirement is that the sale of the security be approved by the FmHA County Supervisor. The trial court stated on page four of its opinion that the sale of the secured crops to MFA was made with the approval of FmHA. Further support of the district court's finding that FmHA approved the sale of the crops can be found in the farm plan established by the FmHA County Supervisor on April 21, 1981 for the Bergsiekers. That plan anticipated production and sales of crops with gross sales proceeds of $56,400.00 for the period of April 1981 until December 31, 1981. Sales were made to MFA from June 24, 1981 to January 4, 1982 in the amount of $50,-606.68. Thus, the district court correctly found that the sale of the Bergsiekers' secured crops to MFA was made with FmHA's approval.

The second requirement is that the proceeds of the approved sale be used for one or more of the purposes set out in 7 C.F.R. § 1962.17(b). Purposes number two and three under § 1962.17(b) are the use of proceeds for farm and home expenses. The district court found that from July 27, 1981 to January 27, 1982 the Bergsiekers used the proceeds of $26,528.14 for farm operating and living expenses. The FmHA farm and home plan for the Bergsiekers for April 1981 to December 31, 1981 anticipated farm and home expenses of $53,-450.00. Thus, the proceeds from the sale of the crops to MFA were specifically used for a purpose set out in 7 C.F.R. § 1962.-

---

Normal income security. This is all security not considered basic security including crops, livestock, poultry, products, and other property covered by FmHA liens which are sold in operating the farm or other business. County Supervisors may release normal income security when the property has been sold or exchanged for its present market value and the proceeds are used for one or more of the following purposes:

(1) To pay debts owed to FmHA.

(2) To pay farm and home or other operating expenses provided for in tables of Form FmHA 431-2, Form FmHA 431-3, or Form FmHA 431-4.

(3) To pay necessary farm and home or other operating expenses shown as debts in the financial statement on Form FmHA 431-2 or Form FmHA 431-3 and to be paid during the year as shown by the debt payment table, provided these debts were incurred in the production, harvesting, or marketing of crops, livestock, poultry or products sold during the year or were for family subsistence for that year.

2. 7 C.F.R. § 1962.18(b) provides in part as follows:

(b) **Accounting by borrower.** The borrower must account for all security and will be instructed regarding its care, maintenance, and disposition when a loan is made and as often afterward as necessary. When borrowers sell security, the sale will be made subject to the FmHA lien. The property and proceeds will remain subject to the lien until the lien is released or the sale is approved by the County Supervisor and the proceeds are used for one or more of the purposes stated in § 1962.17.

17(b) and in accordance with the farm and home plan. Based on the findings by the district court, the lien on the Bergsiekers' crops sold to MFA from June 24, 1981 to January 4, 1982 was released by the approval of the sale of the crops by FmHA and use of the proceeds of the sale for a proper purpose as set out in the FmHA regulations.

█ The district court found that the lien on the crops sold to MFA by the Bergsiekers from June 24, 1981 to January 4, 1982 had not been released because the FmHA County Supervisor declined to approve the use of the proceeds for farm operating and living expenses. However, approval of the use of the proceeds is not required by the FmHA regulations. The fact that FmHA had twice written to MFA giving notice of the security interest on the Bergsiekers' crops also had no effect on the release of the lien under the FmHA regulations. 7 C.F.R. § 1962.18(b) only requires approval of the sale and proper use of the proceeds as set out in § 1962.17(b). Thus, the district court erroneously applied the FmHA regulations to the facts as found. The lien on the crops had been properly released under the FmHA regulations.

The instant case can be distinguished from the previous case this court reviewed involving FmHA, MFA, and a lien on crops. *United States v. Missouri Farmers Ass'n, Inc.*, 764 F.2d 488 (1985), *cert denied* — U.S. ——, 106 S.Ct. 1281, 89 L.Ed.2d 588 (1986). In the previous case, MFA conceded that the lien on the crops had not been released under FmHA regulations. See *id.* at 489. In the instant case, the district court found an approval of the sale and proper use of the proceeds under the FmHA regulations which is a way of releasing a lien on crops under FmHA Regulation 7 C.F.R. § 1962.18(b).

Because we have ruled that the lien on the Bergsiekers' crops sold to MFA from June 24, 1981 to January 4, 1982 was released in accordance with FmHA regulations, we do not reach appellant's argument that the district court erred in entering judgment in favor of the FmHA where the FmHA failed to produce any evidence or carry its burden of proof on the issue of its financial detriment.

We have concluded that the district court properly applied FmHA regulations instead of state law to determine if the lien on the crops sold to MFA by the Bergsiekers from June 24, 1981 to January 4, 1982 had been released. We have also concluded that the district court erroneously applied the FmHA regulations found in 7 C.F.R. § 1962.17(b) and § 1962.18(b) to the facts as found by the district court. The district court should have ruled that under FmHA regulations found in 7 C.F.R. § 1962.17(b) and § 1962.18(b) the lien on the crops had been properly released because the sale of the crops was approved by FmHA and the proceeds of the sale were used for a proper purpose under FmHA regulations.

Accordingly, the district court's judgment for the United States of America in the amount of $26,528.14 is reversed.